Yes, may it please the court, my name is Murray Singer, the attorney for the appellant Michael Smith. Your honors, in their brief, the government concedes that the 924C conviction cannot rest on a conspiracy to assault in light of United States v. Davis, but they make three arguments to support the conviction and to affirm the conviction. First, they argue that the plea was predicated not only on the conspiracy to assault, but on the assault charge as well, charging count five of the indictment. That is simply not the case. I would point to first the plea agreement, which the court can find on page 26 of the appendix, where it specifically indicates that the defendant would allecute that he conspired to assault the victim in the case. He was charged in count five with the assault, right? Yes, count four is the conspiracy to assault, and count five is the assault. And count six, no, I understand that, but it cites two predicates, one being count four, one being count five. So he was charged with the assault. He was charged with the assault as a predicate for count six. And then in the allocution, did he not admit to the assault that he was involved in the assault? No, your honor, the victim was shot, right? The victim was in fact shot, it wasn't just a conspiracy, they shot him. The appellant did not shoot him, and in fact told the judge during the allocution, this is on page 58 of the appendix, I wasn't the shooter. I understand that, but he also, he went back to the car to get the gun. He had the gun in anticipation. I mean, it was certainly reasonably foreseeable that someone was going to be shot, right? But your honor, since he was not the shooter, the only basis for a claim that he's guilty of the assault is an acting in concert. And what the defendant says is, I didn't know that they were going to shoot him. And under New York acting in concert law, section 20 of the New York penal law, the defendant must solicit, request, command, importune, or intentionally aid the others another person to commit the act. The allocution here is simply insufficient to establish that. I can't imagine that any district court, if they were allocuting a defendant on an assault count, and was confronted with this statement from the defendant, I didn't know that they were going to do it, would simply leave the assault count to stand under those circumstances. It would require and would generate much more questioning by the court before that was accepted. The fact that he went to assault and stated that he went there to assault the person, assault is a legal conclusion. He got into a fist fight without any weapon. And another person that he says, I didn't know that they were going to do this, then steps in and commits the act with the dangerous weapon, that alone without more knowledge or assistance or request by a defendant, it's simply not sufficient under the New York penal law, acting in concert to support that charge. Your Honor, the plea allocution itself where the defendant says I wasn't the shooter, the defendant specifically states that I'm admitting to a conspiracy to assault, the prosecution of the government at the time of the plea, once the defendant says I wasn't the shooter, gives the court, this is at page 59, 58 and 59 of the appendix, goes on to state that as the defendant said he's not the shooter, we're not requiring him to allocute to the assault. That's the government-owned words at the plea allocution. And then the court on page 71 of the appendix where the court says, how do you plead to count six, tearing the firearm during a crime of violence, specifically conspiracy to commit assault. But didn't the court also explain at the plea hearing that count six relied on both counts four and five? The court said for count six, first they'd have to prove the underlying crime of violence, that is an assault in aid of racketeering. So the element that's reflected in counts four and five. I mean, no one's objecting there that that's what count six is relying on both four and five, right? Well, count six, yes, relies on counts four and five and what the judge was doing, and this is done in every plea allocution, is the court explains that if this case were to go to trial, the government would have to prove these things for the satisfaction of a jury. And by pleading guilty, you're giving up your right to a jury and agreeing to be found guilty. And the conviction under count six, the 924C can rest on either, at the time, on either the conspiracy or the assault. So the court is simply explaining what would be required to prove to a jury if the case were to go to trial. Our position is, again, that the plea was specifically to a conspiracy, and the admission was to a conspiracy. The government also relies on an argument that any error was harmless. Your Honor, harmless error analysis does not apply under these circumstances. There was no error in the plea. I'm looking at the plea allocution, page 58 of the appendix. He admits that they decided they were going to shoot the guy, and that he carried, he brought his gun. Someone else, indeed, shot him. But they go planning to shoot him. He carries his gun, and, indeed, someone shoots him. I mean, and you don't think that's enough for assault? He says that, but then he immediately takes that back and says, I wasn't the shooter, and I didn't know that they were going to shoot him. But there's a foreseeability aspect to this, is there not? Isn't it enough that it's foreseeable that someone gets shot? Well, first of all, in one place, he says we were going to shoot him, and then later on, he backs off some. But you go to assault someone to retaliate, you bring your gun, and then that person winds up getting shot. I mean, I have a little trouble understanding. It's not a, the issue is not foreseeability. It is whether the allocution is sufficient under New York penal law, the acting in concert. The acting in concert is the only legal basis upon which he could be charged with this assault, because he was not the person who fired the weapon. And under the New York penal law definition, in section 20 of the New York penal law, you have to solicit, command, request, importune, or intentionally aid the other person to commit the act. And you do that with the mental culpability that's required. And there is nothing in this record to support those elements. It's not a matter of reasonably foreseeable. It's whether you did something to help them. It's not enough to be there and even know that something might happen. You have to play a role. And that is why we argue that these admissions are not sufficient to support the acting in concert, and therefore not sufficient to support the substantive assault count. It's certainly enough to support the conspiracy. But... Oh, Mr. Singer, this is Judge Parker. You're simply looking, you're looking to take the, uh, take back your client, take back the guilty plea. Is that right? No, Judge. I'm asking to find that the conviction, this conviction, predicated as it is on a conspiracy to assault, is no longer constitutional in light of United States v. Davis. So the effect would be to undo the guilty plea and to dismiss the count, yes. You have one minute. All right. I, uh, again, uh, the harmless, uh, we argue that the, uh, harmless error does not apply under these circumstances because there was no error in the plea. The plea was proper and its subsequent law rendered the crime to which Mr. Smith pled unconstitutional. But their harmless error analysis comes into play only if there was an error in the plea and there was none. So it should not play any role, uh, until we would urge this court to, uh, uh, to reverse the conviction, uh, under count six, the 924C count and dismiss that count as no longer being constitutional in the light of United States v. Davis. Thank you very much. Thank you. We'll hear from the government. May it please the court. My name is Chris Cafferon. I'm an assistant United States attorney for the Eastern District of New York, and I represent the United States. This court should affirm the judgment because, uh, Smith pleaded guilty to a section 924C crime that, as the court had just noted, was predicated on an assault in aid of racketeering, uh, which remains a valid crime of violence in any error in the plea was harmless because Smith would have pleaded guilty regardless of the error as he negotiated a very favorable disposition that significantly reduced the statutory penalties that he faced. Um, the Smith 924C conviction, uh, we, we agree that conspiracy to assault is no longer a valid predicate, but the defendant does not appear to contest. And that's for good reason, because there's clear precedent from this court that assault remains a valid predicate. Um, and that's, I'm citing to, uh, both tab and a thing versus bar. So it's pretty clear. If you look at Johnson one definition, that assault would fit within, uh, the definition of use of force. Um, and as the court had noted during the plea, uh, the district court, not only informed Mr. Smith that he was charged on the, that the 924C count, uh, relied both on the conspiracy to assault and the assault, but then in fact instructed him on all the elements of assault. And knowing all of that, he allocated, uh, and knowing that the governor was going to be required to prove that the 924C came from the assault, he still pleaded guilty. Um, in addition to that, uh, his factual allocution established the elements of assault. The, um, uh, defense counsel wants to limit the theory of liability to just aiding and abetting, but that's just not the case. Pinkerton also provides for a reasonably foreseeable theory of liability here. And it was clearly reasonable. Excuse me, this is Judge Harney. So, uh, why isn't Pinkerton a problematic basis in this context now after Davis, which said you can't rely on conspiracy? Uh, it's, it's not because you, Pinkerton is dealing with a, uh, theory of liability as to whether you can have secondary liability, just like aiding and abetting liability. And so when you go into a situation where you're trying to determine whether the substantive assault, whether he's guilty of that assault, I don't think that Davis extends to theories of liability here. Um, this, this conduct is, um, was pretty clear when you're a member of a high ranking member of a gang and you go with firearms with the intent to shoot this individual, like Judge Chin had noted the first time he was asked, he admitted that they were going there with the purpose of shooting the individual. He himself brings a gun, um, and, and tries to employ that gun, but an innocent bystander intervenes, preventing him from being able to get off the shot. Well, nonetheless, that, that would be, that would be a moron attempt. I mean, if we're looking at still the acting in concert language that your adversary was citing and, and you're, you're pointing us now to Pinkerton, which to my mind is kind of undercut by Davis. I'm having a little difficulty figuring out what we look to, to determine whether there's an actual predicate crime that can serve as the basis for a 924 C liability. Yeah. And Pinkerton is a, you know, just to underscore this Pinkerton is a method of proof and the crime is the substantive one that still, uh, remains valid after Davis. Um, and so, uh, you know, Pinkerton exists. It doesn't, I don't think it's implicated in any way by Davis because the, um, because the crime for which he's being found guilty would still be the substantive assault, which remains valid after Davis. Um, and so the, um, so articulate, uh, how, uh, you believe he, um, allocated to the assault. What did he say that suggests he admitted to the assault? So he admitted to the assault because he admitted that he was a high ranking member of the Bloods. He admitted that he went over to this barbecue with his fellow, uh, co-conspirator blood members to assault this individual as retaliation for that individual shooting one of their fellow gang members. Uh, they went over there because they're going to assault an individual who's got a violent history. So they go there. He admits we went there with guns. Um, he goes there, he gets into the fight. He goes back to get his gun to try to shoot this individual while that's happening. His fellow gang member, knowing that the rules of the gang require when you, when you go there, you've got to get retaliation. And if your leader is unable to carry out the acts, you carry them out. Uh, so based on that record, there was, it was reasonably foreseeable to him that one of his fellow gang member who he knew was armed with a firearm would use that firearm to carry out this retaliation plan. Judge Bianco held as much in connection with some post Johnson briefing, uh, where he held that it was reasonably foreseeable that force would be used given the events of that day, given who they were going, uh, to assault. So when you look at the, um, was, was, when he got into the fight, was the fight with, uh, the victim, the guy who eventually got shot. That's correct. Your honor. That's correct. He got it. Smith got into the fight with the victim and then he went back to get his car because the victim had got the better of them. Um, but, but then the innocent bystander got in between Smith and the victim. So that when Smith pulled the gun on the victim, he couldn't get a clear shot. And that's when, uh, Smith's co-conspirator took the shot severing the victim's femoral artery. So you don't have any situation here where you've got to worry about, there wasn't actual force use force was used. It's undisputed that force was used this victim, but for emergency personnel and law enforcement probably would have died from blood loss. This was a significant injury. Um, and it was reasonably foreseeable in light of all those facts and circumstances. Um, and so against that backdrop, you've got, um, a harmless error analysis. I know the defense counsel argues that harmless error doesn't apply, but clearly in the rule 11 proceeding, um, predicating the nine 24 seat count partially on the conspiracy to and as well as not more precisely defining the crime of violence, because at the time the, you know, the, the case law was correct. And judge Bianco at the time did instruct, um, the defendant on the correct law, but now subsequently the laws changed. So he wasn't adequately instructed about, or not appropriately distracted about the crime of violence, but, um, any error is completely harmless because this defendant would have pleaded guilty. Regardless, this defendant received a very favorable disposition. He was aware of the elements of assault. He was aware that the nine 24 seat would have required the government to prove the predicate acts of conspiracy to assault and assault. Um, and he decided to go forward and that's not surprising because he significantly reduced his statutory penalties, his statutory penalties. He was able to convince the government to allow him to plead to a lesser included offense of the nine 24 seat, which carried a five year mandatory minimum sentence instead of a 10 year mandatory minimum sentence. He was able to another, there was also another assault, right? That, that was it. Yeah, absolutely. Your honor, there was a second, he got it. He got coverage for an uncharged shooting that he had committed. So he got the federal government to agree not to prosecute him for that uncharged shooting. Uh, he, he also got, uh, the dismissal. We agreed to dismiss the second nine 24 seat count, which at the time carried a 25 year statutory mandatory minimum sentence that had to run consecutively to any other sentence. So by, by his negotiations, he reduced his statutory mandatory minimum from 40 years to 15. Uh, and that's significant because he received the sentence of 20 years, which was half of what the statutory penalties would have been if convicted of all counts. Uh, there's just simply nothing in the record that suggests this defendant would have done anything other than pleading guilty. And in fact, he doesn't even argue otherwise. He's not saying I wouldn't have pleaded guilty had I known that I couldn't be convicted of the conspiracy to assault. He's just saying subsequent case laws in my favor. And so let's dismiss that count. So there's absolutely nothing in the record to suggest he would have done anything than what he actually did. Uh, in addition to the coverage, in addition to getting the reduced statutory penalties, we agreed to dismiss six open counts. Um, he received a very favorable disposition and there's nothing in the papers to suggest that he would have done, uh, that he would not have pleaded guilty otherwise. And so for those reasons, and for all the other reasons that we set forth in our papers, the court should affirm the judgment of the district court. And, uh, unless the court has additional questions, the government will rest on its papers. Uh, thank you. Thank you, your honor. Well, we reserve decision.